**26-2113**

# United States Court of Appeals for the Federal Circuit

WOLVERINE BARCODE IP LLC,

*Plaintiff-Appellant,*

– v. –

ALBERTSONS COS. INC.,

*Defendant-Appellee.*

*On Appeal from the United States District Court for the Northern District of Texas in No. 3:25-cv-01448-B, Honorable Jane J. Boyle*

## APPELLEE'S BRIEF

MATTHEW WARREN
MADELINE A. WOODALL
WARREN LLP
2261 Market Street, No. 606
San Francisco, California 94114
(415) 895-2940
matt@warrenllp.com
madeline@warrenllp.com

*Counsel for Appellee Albertsons Cos. Inc.*

NOVEMBER 10, 2026

COUNSEL PRESS
A Proceed Service
The Appellate Experts®
(800) 4-APPEAL • (716345)

## CLAIMS 1-3 OF U.S. PATENT NO. 9,280,689

1. A method for conducting offline electronic commerce transactions having a vendor barcode scanner and a vendor cash register comprising:

(a) providing a personal code to a person for their use to purchase goods;

(b) converting said personal code into barcode format to form a User ID Barcode, said User ID Barcode corresponding to said personal code and including at least one special character to distinguish the barcode as a User ID Barcode from a product barcode;

(c) storing said personal code in said User ID Barcode format by said person for use to purchase goods and storing said personal code in a User Vendor Management Server to permit purchases to be made at a vendor;

(d) establishing a User Account in a User Vendor Management Server corresponding to said personal code;

(e) depositing funds in said User Account to establish a credit limit;

(f) conducting purchases at vendors each having a vendor server wherein each purchase includes scanning product barcodes including product price and said User ID Barcode with a product barcode scanner at

the vendor cash register and transmitting both product barcodes and User ID Barcode to said vendor server;

(g) detecting the User ID Barcode at the vendor server and forwarding the ID Barcode and purchase price to said User Vendor Management Server;

(h) comparing the purchase price with the funds in said User Vendor Management Server to determine if there are available funds within the credit limit in the User Vendor Management Server account, and if there are, sending an approval signal to the vendor server;

(i) forwarding the approval signal to the vendor cash register; and

(i)[1] repeating steps (f) through (i) for subsequent purchase transactions using said User ID Barcode.

2. The method of claim 1 wherein said User ID Barcode is stored by said person in a cell phone.
3. The method of claim 1 wherein said User ID Barcode is stored by said person on a label secured to a credit card or secured to a user's cell phone.

---

[1] The '689 Patent erroneously labels this step with the letter "i." To avoid confusion, the District Court used "j" to refer to Claim 1's ultimate step. Appx4.

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2026-2113

**Short Case Caption** Wolverine Barcode IP LLC v. Albertsons Cos. Inc.

**Filing Party/Entity** Albertsons Companies, Inc.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/18/2026

Signature:

Name: Matthew S. Warren

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Albertsons Companies, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Warren LLP | Jessica Lord | |
| Skiermont Derby LLP | Sarah E. Spires | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ..... iii

STATEMENT OF RELATED CASES ..... 1

JURISDICTIONAL STATEMENT ..... 2

STATEMENT OF THE ISSUES ..... 2

STATEMENT OF THE CASE ..... 3

A. Nature of the Case and Procedural History ..... 3

B. The ’689 Patent Describes an Arrangement for Processing Retail Purchases Using Existing Technology ..... 4

C. Claims 1 Through 3 Recite the Steps for Identifying a Customer and Authorizing Purchases Using a Customer Account ..... 5

D. The District Court “Scrutinized” the Claims and Found Them Ineligible ..... 7

E. Wolverine Failed to Plausibly Plead Infringement ..... 8

SUMMARY OF THE ARGUMENT ..... 8

ARGUMENT ..... 10

I. Standard of Review ..... 10

II. The District Court Correctly Held That Claims 1-3 Are Directed to an Abstract Idea Under *Alice* Step One ..... 11

A. The Claims Are Directed to Establishing Customer Accounts and Using Those Accounts to Make Purchases ..... 11

B. The Barcode and Server Limitations Implement the Payment Method Rather Than Improve the Underlying Technology ..... 13

C. The Specification’s Referenced Benefits Do Not Change the Focus of Claims ..... 16

III. Claims 1-3 Lack an Inventive Concept Under *Alice* Step Two .......... 19

A. Each Limitation Implements An Account-Based Payment Method .......... 19

B. The Ordered Combination Does Not Supply an Inventive Technological Arrangement .......... 20

C. The Specification's Referenced Benefits Are Not Claimed Technological Improvements .......... 22

D. The District Court Properly Dismissed Under Rule 12(b)(6) .......... 27

IV. Any Amendment to Cure Ineligibility Under § 101 Would Be Futile .......... 29

V. The Judgment May Also Be Affirmed Because Wolverine Fails to State a Claim for Infringement .......... 35

A. This Court May Affirm on Grounds Albertsons Preserved Below .......... 35

B. Wolverine Admits That Albertsons Does Not Directly Infringe the Patent .......... 35

C. Wolverine Fails to Plausibly Allege Indirect Infringement .......... 38

CONCLUSION AND STATEMENT OF RELIEF SOUGHT .......... 39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**


*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
882 F.3d 1121 (Fed. Cir. 2018) .................................................. 27, 28, 30, 34

*Adnexus Inc. v. Meta Platforms, Inc.*,
160 F.4th 1216 (Fed. Cir. 2025) ..........................................................10

*Affinity Laboratories of Texas, LLC v. DIRECTV, LLC*,
838 F.3d 1253 (Fed. Cir. 2016) ..........................................................16

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
797 F.3d 1020 (Fed. Cir. 2015) .................................................. 35, 36

*Alice Corp. v. CLS Bank Int'l*,
573 U.S. 208 (2014)................................................................ *passim*

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
841 F.3d 1288 (Fed. Cir. 2016) ..........................................................21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................39

*Bailey v. Dart Container Corp. of Mich.*,
292 F.3d 1360 (Fed. Cir. 2002) ..........................................................35

*BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016) .......................................... 20, 21, 31

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................39

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018) .......................................... 23, 27, 28

*Bozeman Financial LLC v. Federal Reserve Bank of Atlanta*,
955 F.3d 971 (Fed. Cir. 2020) ............................................................17

*CardioNet, LLC v. InfoBionic, Inc.*,
955 F.3d 1358 (Fed. Cir. 2020) ..........................................................18

*Cascades Branding Innovation LLC v. Aldi, Inc.*,
No. 2024-1729, 2025 WL 2731321 (Fed. Cir. Sept. 25, 2025).........................32

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
927 F.3d 1306 (Fed. Cir. 2019) .................................................. 22, 27

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019) ........................................................ 23, 24, 26, 30

*CosmoKey Solutions GmbH & Co. KG v. Duo Security LLC*,
15 F.4th 1091 (Fed. Cir. 2021) ..........................................................................27

*CyberSource Corp. v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011) ..........................................................................17

*DDR Holdings, LLC v. Hotels.com, L.P.*,
773 F.3d 1245 (Fed. Cir. 2014) ..........................................................................18

*Diamond v. Diehr*,
450 U.S. 175 (1981)..........................................................................................22

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) ..........................................................................12

*Fujitsu Ltd. v. Netgear Inc.*,
620 F.3d 1321 (Fed. Cir. 2010) ..........................................................................39

*Glaxo, Inc. v. TorPharm, Inc.*,
153 F.3d 1366 (Fed. Cir. 1998) ..........................................................................35

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
313 F.3d 305 (5th Cir. 2002) ....................................................................... 10, 34

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
681 F.3d 1323 (Fed. Cir. 2012) ..........................................................................38

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
869 F.3d 1372 (Fed. Cir. 2017) ..........................................................................38

*Lyda v. CBS Corp.*,
838 F.3d 1331 (Fed. Cir. 2016) ..................................................................... 37, 38

*McRO, Inc. v. Bandai Namco Games America Inc.*,
837 F.3d 1299 (Fed. Cir. 2016) ..........................................................................18

*Messaging Gateway Sols., LLC v. Amdocs, Inc.*,
No. 14-732, 2015 WL 1744343 (D. Del. Apr. 15, 2015) ..................... 7-8, 18, 19

*Mobile Acuity Ltd. v. Blippar Ltd.*,
110 F.4th 1280 (Fed. Cir. 2024) .........................................................................29

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018) ..........................................................................38

*RecogniCorp, LLC v. Nintendo Co.*,
855 F.3d 1322 (Fed. Cir. 2017) .................... 25, 26

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
65 F.4th 698 (Fed. Cir. 2023) .................... 29

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
873 F.3d 905 (Fed. Cir. 2017) .................... 7, 15, 25

*Simio, LLC v. FlexSim Software Prods., Inc.*,
983 F.3d 1353 (Fed. Cir. 2020) .................... 31

*Smart Systems Innovations, LLC v. Chicago Transit Authority*,
873 F.3d 1364 (Fed. Cir. 2017) .................... 13

*Solutran, Inc. v. Elavon, Inc.*,
931 F.3d 1161 (Fed. Cir. 2019) .................... 7, 15

*Synopsys, Inc. v. Mentor Graphics Corp.*,
839 F.3d 1138 (Fed. Cir. 2016) .................... 28

*United Servs. Auto. Ass'n v. PNC Bank N.A.*,
139 F.4th 1332 (Fed. Cir. 2025) .................... 10

*Universal Secure Registry LLC v. Apple Inc.*,
10 F.4th 1342 (Fed. Cir. 2021) .................... 17

*US Patent No. 7,679,637 LLC v. Google LLC*,
164 F.4th 1373 (Fed. Cir. 2026) .................... 16, 28, 29

*VDPP LLC v. Volkswagen Grp. of Am., Inc.*,
186 F.4th 1372 (Fed. Cir. 2026) .................... 10

*W. Express Bancshares, LLC v. Green DOT Corp.*,
816 F. App'x 485 (Fed. Cir. 2020) .................... 7, 12

**Statutes and Other Authorities:**

19 U.S.C. § 1337 .................... 2

35 U.S.C. § 101 .................... *passim*

Fed. Cir. Rule 47.5(a) .................... 1

Fed. Cir. Rule 47.5(b) .................... 1

Fed. R. Civ. P. 12(b)(6) .................... 3, 10, 15, 27

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5(b), Appellee submits that Appellant's Statement of Related Cases is incomplete. Pursuant to Federal Circuit Rule 47.5(a), Appellee submits this counterstatement identifying all related proceedings known to Appellee.

Appellant identified three proceedings pending in the United States District Court for the Eastern District of Texas asserting the sole patent-in-suit, U.S. Patent No. 9,280,689 ("the '689 patent"): *Wolverine Barcode IP LLC v. Chipotle Mexican Grill, Inc.*, No. 2:26-cv-00016; *Wolverine Barcode IP LLC v. Walgreen Co.*, No. 2:26-cv-00153 (consolidated for pretrial proceedings with Member Case No. 2:26-cv-00021, *Wolverine Barcode IP LLC v. Jamba Juice, LLC*); and *Wolverine Barcode IP LLC v. Subway IP LLC*, No. 2:26-cv-00285.

The '689 patent is subject to multiple civil infringement actions across federal district courts. Because this appeal reviews the final judgment invalidating the '689 patent's asserted claims under 35 U.S.C. § 101, this Court's decision will directly affect its validity and enforceability in those parallel proceedings. Appellant omitted co-pending enforcement actions in the United States District Court for the Western District of Texas, including *Wolverine Barcode IP LLC v. 7-Eleven, Inc.*, No. 7:25-cv-00207, and *Wolverine Barcode IP LLC v. Macy's Inc.*, No. 7:25-cv-00404, both of which are stayed pending this appeal.

To Appellee's knowledge, the '689 patent is not currently subject to USPTO administrative proceedings or an ITC investigation under 19 U.S.C. § 1337. No other appeal arising from the underlying action, *Wolverine Barcode IP LLC v. Albertsons Cos.*, No. 3:25-cv-01448-E (N.D. Tex.), or asserting the '689 patent is pending before or previously decided by this Court.

## JURISDICTIONAL STATEMENT

Appellee agrees that Appellant's jurisdictional statement is correct and complete.

## STATEMENT OF THE ISSUES

1. Whether the district court correctly held claims 1-3 of U.S. Patent No. 9,280,689 ("the '689 patent") patent-ineligible under 35 U.S.C. § 101 because they are directed to the abstract idea of setting up customer accounts for retail purchases without supplying an inventive concept in the claimed scanner, barcode, or server functions.

2. Whether the district court abused its discretion by denying Wolverine leave to amend its complaint, where the asserted patent claims are fixed and no amendment to the complaint could cure their ineligibility under 35 U.S.C. § 101.

3. Whether the judgment should be affirmed on non-infringement grounds because Wolverine's complaint fails to state a claim for direct, induced, or contributory infringement of the asserted patent.

## STATEMENT OF THE CASE

### A. Nature of the Case and Procedural History

Wolverine Barcode IP LLC ("Wolverine") sued Albertsons Companies, Inc. ("Albertsons") in the Northern District of Texas, alleging that the Albertsons Cash mobile payment feature infringed claims 1 through 3 of the '689 patent. Appx28-Appx34. Albertsons moved to dismiss under Rule 12(b)(6), contending that the asserted claims were ineligible under 35 U.S.C. § 101 and that the complaint failed to plausibly allege infringement. Appx148-Appx156. Albertsons also moved to dismiss for failure to state a claim for direct, indirect, induced, or contributory infringement. Appx153-Appx157. Specifically, Albertsons argued that Wolverine's claim chart attributed steps of the claimed method to both Albertsons and its customers without showing that the customers' conduct was attributable to Albertsons. Appx153-Appx156. The trial court did not reach this issue due to its Section 101 dismissal. Appx2-Appx21.

The district court granted the motion on § 101 grounds. Appx1-Appx21. Finding the claims futilely directed to unpatentable subject matter under § 101, the district court denied leave to amend and entered final judgment on July 9, 2026. Appx1-Appx21. Wolverine appealed.

### B. The ’689 Patent Describes an Arrangement for Processing Retail Purchases Using Existing Technology

The ’689 patent claims a particular way to identify a customer, check an account, and approve a purchase. It does not claim an improvement in the technology used to perform those functions.

The ’689 patent is entitled “Method and Apparatus for Conducting Offline Commerce Transactions.” Appx36. Its specification begins with a commercial problem: credit-card transaction costs made very small purchases, including micropayments, uneconomical. Appx53 (’689 patent at 1:26-31). Other payment methods required special card readers or imposed costs and inconvenience on merchants and customers. *Id.* (’689 patent at 1:32-60). The patent proposes a method of identifying a customer through a barcode readable by the product scanner already available at checkout, then approving purchases against an account maintained by a User Vendor Management Server. *Id.* (’689 patent at 2:34-65).

The patent repeatedly emphasizes the advantage of using equipment merchants already possess. It states that practically all store cash registers are equipped with barcode scanners, and that scanning a customer identifier with existing equipment permits faster checkout at limited transaction-processing cost. Appx53 (’689 patent at 2:39-58), Appx56 (’689 patent at 7:1-7). The patent does not describe an improvement to the optical operation of those scanners. Rather, it describes using them to capture another category of transaction information.

The specification describes the User ID Barcode as derived from conventional barcode technology, with a special character that distinguishes customer identification from product information. Appx54 ('689 patent at 3:15-30). It also discloses alternatives for capturing customer identification, including manual entry and RFID or NFC. Those disclosures reinforce that the identification technique serves the purchase transaction, rather than constituting an improvement to the identification technology itself. Even assuming that claim 1 is limited to conventional barcode and scanner technology, the claimed method uses those features to identify the customer and authorize purchases; it does not improve scanner or barcode technology. Appx61.

### C. Claims 1 Through 3 Recite the Steps for Identifying a Customer and Authorizing Purchases Using a Customer Account

Claim 1, the only asserted independent claim, recites a "method for conducting offline electronic commerce transactions" using a vendor barcode scanner and cash register. Appx61. Its first five steps establish the means of payment. Step (a) provides a personal code. Step (b) converts the code into a User ID Barcode containing "at least one special character" to distinguish it from a product barcode. Step (c) requires the person to store the code in barcode format and requires storage of the personal code at the User Vendor Management Server. Step (d) establishes an account corresponding to that code. Step (e) deposits funds in the account to establish a credit limit. Appx61.

The remaining steps use that account for purchases. Step (f) scans product barcodes and the User ID Barcode at the vendor's cash register and transmits both to the vendor server. Step (g) requires that server to detect the User ID Barcode and forward the identifier and purchase price to the User Vendor Management Server. Step (h) compares the purchase price with the available account funds and, if sufficient, sends an approval signal. Step (i) forwards the approval to the cash register. Step (j) repeats the transaction steps for subsequent purchases. Appx61.

Claim 1 expressly requires a distinguishing barcode character, use of a product scanner, and a specified path between vendor and management servers. It does not prescribe a new scanner operation, encoding algorithm, data-separation technique, or network protocol. In particular, step (g) requires detection of the User ID Barcode, but does not recite a particular algorithm for detecting its special character. Nor does the claim require the encryption, automatic first-use registration, or particular privacy measures described elsewhere in the specification. Appx54, Appx61.

Dependent claim 2 requires storage of the User ID Barcode in a cellphone. Dependent claim 3 requires storage on a label secured to a credit card or cellphone. Appx61. Both specify how a customer carries the barcode for scanning, rather than improvements to the cellphone, card, or label.

**D. The District Court "Scrutinized" the Claims and Found Them Ineligible**

The district court did not accept either party's initial formulation of the claims' focus. It rejected Wolverine's reliance on the patent's abstract and rejected Albertsons' formulation, "verifying a customer's ability to pay," as too broad. Appx11-Appx12. The trial court then "scrutinized" the claims. Appx20. It reviewed Claim 1 limitation by limitation, explaining how steps (a) through (e) establish customer accounts and steps (f) through (j) use those accounts for purchases. Appx13-Appx14. The court held that the claims were directed to the abstract idea of "setting up individual customer accounts and allowing those accounts to be used for purchases." Appx11.

At *Alice* step one, the court compared the account and payment arrangement with *Western Express* and the commercial transaction sequencing in *Solutran*. Appx14-Appx15 (citing *W. Express Bancshares, LLC v. Green DOT Corp.*, 816 F. App'x 485 (Fed. Cir. 2020) (nonprecedential); *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161 (Fed. Cir. 2019)). At step two, it considered the claimed barcode, scanner, servers, and ordered sequence, including Wolverine's asserted benefits of automatic registration and improved security. Appx16-Appx18. Relying in part on *Secured Mail*, it held that the claims did not identify an inventive technological application. Appx16-Appx18 (citing *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905 (Fed. Cir. 2017)). The court also distinguished *Messaging*

*Gateway* because that case addressed a technical incompatibility between communication systems, whereas the ’689 patent addressed a way to pay for goods. Appx19 (citing *Messaging Gateway Sols., LLC v. Amdocs, Inc.*, No. 14-732, 2015 WL 1744343, at *5 (D. Del. Apr. 15, 2015) (nonprecedential)).

### E. Wolverine Failed to Plausibly Plead Infringement

Albertsons independently moved to dismiss Wolverine’s infringement claims because Wolverine’s own claim chart attributed steps of the patented method to both Albertsons and its customers without alleging facts establishing that all steps were performed by or attributable to a single entity. Appx153-Appx156. Albertsons also argued that Wolverine failed to plead facts sufficient to establish induced or contributory infringement. Appx156-Appx157. The district court did not reach these alternative grounds because it dismissed the complaint under § 101. Appx2-Appx21.

## SUMMARY OF THE ARGUMENT

The ’689 patent claims a particular way to identify a customer, check an account, and approve a purchase. It does not claim an improvement in the technology used to perform those functions. The district court correctly identified the focus of claims 1 through 3 after examining their limitations, including the distinguishing barcode character, the product scanner, and the vendor and management servers. Appx11-Appx14. Those limitations implement an account-

based purchase. They do not change the claims' abstract commercial focus under *Alice* step one.

Nor do the limitations, considered individually or as an ordered combination, supply an inventive technological application under *Alice* step two. The claimed sequence captures customer and product information, checks available funds, and returns approval to the cash register. Appx61. The specification describes advantages in cost and convenience, but it does not transform that transaction workflow into an improvement in barcode scanning or computer processing. The district court fully considered the asserted advantages and correctly concluded that they do not establish eligibility. Appx16-Appx18.

The Court should affirm the judgment under § 101 because the asserted claims are directed to an abstract idea and lack an inventive concept under *Alice*. That ruling fully resolves this appeal, making it unnecessary to reach infringement. If the Court does not affirm under § 101, however, it may and should affirm on the independent grounds Albertsons preserved below, even though the district court did not reach them. Wolverine's complaint fails to state a claim for direct infringement because it does not adequately allege that all steps of the claimed method are performed by or attributable to a single entity. Appx28-Appx34. It also fails to plead the required elements of induced or contributory infringement.

Appx28-Appx34. Thus, this Court should affirm the judgment under § 101 or, alternatively, for failure to state a claim for infringement.

## ARGUMENT

### I. Standard of Review

This Court applies regional circuit law, here the Fifth Circuit, to procedural matters, including motions to dismiss and requests for leave to amend. *VDPP LLC v. Volkswagen Grp. of Am., Inc.*, 186 F.4th 1372, 1376 (Fed. Cir. 2026).

This Court reviews *de novo* a district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Id.* at 1376 (citing *Adnexus Inc. v. Meta Platforms, Inc.*, 160 F.4th 1216, 1220 (Fed. Cir. 2025)).

Patent eligibility under 35 U.S.C. § 101 is an issue of law reviewed *de novo*. *United Servs. Auto. Ass'n v. PNC Bank N.A.*, 139 F.4th 1332, 1336 (Fed. Cir. 2025).

Denial of leave to amend is reviewed for abuse of discretion. *See* Appellant Br. at 9 (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir. 2002)).

This Court also reviews *de novo* whether Wolverine's complaint states a plausible claim for direct or indirect patent infringement under Rule 12(b)(6). *Adnexus*, 160 F.4th at 1220-21.

## II. The District Court Correctly Held That Claims 1-3 Are Directed to an Abstract Idea Under *Alice* Step One.

### A. The Claims Are Directed to Establishing Customer Accounts and Using Those Accounts to Make Purchases

The patent is the starting point for the § 101 analysis. The patent identifies payment-processing expense and inconvenience as the problem and proposes identifying customers and authorizing purchases through existing checkout equipment. Appx53 ('689 patent at 1:26-60, 2:34-65). Claim 1 specifies a particular way to identify a customer, check an account, and approve a purchase. It does not claim an improvement in the technology used to perform those functions. Appx61.

The district court did not disregard the claimed technological features. Appx12-Appx14. Indeed, it rejected Albertsons' initial description, "verifying a customer's ability to pay," as too broad, and independently examined each limitation, including the special character, checkout scanner, vendor server, management server, and approval signal. Appx12-Appx14. The court then identified the claims' focus as "setting up individual customer accounts and allowing those accounts to be used for purchases." Appx11. That conclusion reflects the claims' character as a whole, not a reduction of the invention to the single step of checking available funds. *See Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217-19 (2014) (requiring consideration of claim elements both

individually and "as an ordered combination"); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-37 (Fed. Cir. 2016) (directing courts to assess the claims' character as a whole, in light of the specification, rather than focus on individual elements in isolation).

Claim 1(a) through (e) provides a personal code, converts it into a distinguishing User ID Barcode, stores the code, establishes an account, and deposits funds. Claim 1(f) through (j) uses that identifier at checkout, routes transaction information through the two servers, compares the purchase price with available funds, communicates approval, and repeats the process for later purchases. Appx61.

Claims 2 and 3 specify how the customer carries the barcode, in a cellphone or on a label secured to a cellphone or credit card. Appx61. The combined purpose of these limitations is to establish and use a customer payment account.

That is why the district court's comparison to *Western Express Bancshares, LLC* , 816 F. App'x at 486-87 (nonprecedential), is persuasive. *Western Express* held claims directed to the basic concept of a payment card ineligible even though the patentee emphasized advantages in creating accounts and making immediate purchases. *Id.* at 486-87. Here, too, the asserted advance is a way to establish and use an account for purchases. Wolverine responds that *Western Express* did not claim a special-character barcode or a two-server payment path. Appellant Br. at

14. But the analogy concerns the claims' commercial focus, not identical hardware. The district court examined each limitation before determining the focus of the claims as a whole. Appx13-Appx14. It did not treat the barcode and server requirements as though they were absent.

*Smart Systems Innovations, LLC v. Chicago Transit Authority*, 873 F.3d 1364, 1368-72 (Fed. Cir. 2017) shows the defect in Wolverine's argument. There, the claims used bankcards and electronic infrastructure to collect transit fares more conveniently. The Court held that the claimed advance lay in collecting payment, not improving the computers or fare-collection technology. *Id.* The same distinction is dispositive here. The '689 patent proposes using checkout barcode scanners already in stores to avoid specialized payment readers and reduce transaction costs. Appx53 ('689 patent at 2:39-58), Appx56 ('689 patent at 7:1-7). The claimed scanner and server steps are concrete, but they serve the same *commercial* end: identifying a customer and authorizing payment from an account. The use of existing equipment to make that transaction less costly does not change its abstract focus.

### B. The Barcode and Server Limitations Implement the Payment Method Rather Than Improve the Underlying Technology.

Wolverine emphasizes the special character, the scanning of customer and product barcodes in the same checkout process, and the allocation of tasks between

the vendor server and the management server. Appellant Br. at 10-15. Claim 1(b) requires a character distinguishing the customer barcode from product barcodes; step (f) requires scanning both; step (g) assigns detection and forwarding to the vendor server; and steps (h) and (i) assign funds comparison and approval to the management server, with the approval returned to the register. Appx61. Albertsons accepts that architecture as claimed, but that does not change the ineligibility result. The question is whether it improves the technology or specifies how to perform the payment method. It does neither. The claim does not require a change in how the scanner reads barcodes or prescribes a new detection algorithm. It directs existing checkout and server functions toward the authorization of purchases.

Wolverine calls the special character a solution to a "scanner-side differentiation" problem. Appellant Br. at 14-15. The character distinguishes a customer identifier from product data at checkout. Appx54 ('689 patent at 3:15-30). But claim 1 does not change the scanner's optical operation or specify a new way for the vendor server to detect the character. Appx61. The specification also describes manual entry and other means of customer identification. Appx54. Those alternatives reinforce the transactional purpose of the identifier: the system must know which account to charge. That is a payment function, not a claimed advance in barcode technology.

*Secured Mail*, 873 F.3d at 910-13, makes the distinction concrete. The claims there used identifiers, including barcodes, with computers and databases to obtain information about mail objects. The Court affirmed dismissal under Rule 12(b)(6) because the claims did not show what was inventive about the identifiers or the technology used to generate and process them. *Id*. at 911-13. Wolverine tries to distinguish *Secured Mail* arguing that claim 1(b) expressly requires a special character. Appellant Br. at 15. That character identifies the category of information presented to the checkout system. But the claim still does not prescribe an improved encoding or detection technique. Like the identifiers in *Secured Mail*, it supplies information that the system uses to perform the underlying method. The distinguishing character makes the payment arrangement more specific; it does not make the scanner or server technology inventive. *Secured Mail* strongly supports the district court's dismissal of the patent in suit, and the Appellant's brief does not convince otherwise.

*Solutran*, 931 F.3d at 1166-67, likewise distinguished an improvement in check-processing business practice from an improvement in scanning or electronic processing. Its claims changed when a merchant received credit for a check, but did not improve the technical capture of check information. *Id*. at 1167. Wolverine argues that its marker changes the technical capture of information. Appellant Br. at 14-15. That is not correct. Wolverine's claim uses an ordinary

product scanner to read a customer identifier as well as product barcodes; it does not change the capture mechanism. *Affinity Laboratories of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016), similarly distinguishes a desired result from the claimed technological means for achieving it. And *US Patent No. 7,679,637 LLC v. Google LLC*, 164 F.4th 1373, 1377-80 (Fed. Cir. 2026), requires examination of the claims in light of the specification for a discernible technological improvement. That examination here supports a finding of patent ineligibility. The specification reveals a particular payment workflow, not an improvement in scanner or server operation.

### C. The Specification's Referenced Benefits Do Not Change the Focus of Claims

Wolverine invokes the specification's references to lower transaction costs, existing checkout equipment, automatic registration, and improved privacy and security.[1] Appellant Br. at 16-19. Those disclosures are relevant, but their significance depends on what the claims actually require. The patent identifies expensive payment processing and inconvenient equipment as the problems to be solved. Claim 1 addresses them by using a customer barcode, a product scanner, and account-verification servers. Appx53-Appx54, Appx61. That account-based

[1] Wolverine asserts that the patent safeguards "security for the user's personal sensitive information," citing Appx55 at 5:66-67. *See* Appellant Br. at 4, 19. That quoted phrase, however, appears nowhere in the cited passage—or anywhere else in the patent.

payment arrangement may offer commercial advantages without claiming an improvement to the operation of the equipment. That is the case here. The specification also discusses encryption and automatic registration, but claim 1 does not require a particular encryption technique or automatic first-use registration. Appx54, Appx61. Those disclosures cannot add limitations to the claim.

*Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1350-55 (Fed. Cir. 2021), is a particularly close comparison. There, claims involving electronic authentication and payment authorization used familiar computing functions to confirm a user's identity and approve transactions. *Id.* The Court rejected eligibility notwithstanding asserted advantages in security and convenience because the claims did not recite a technological improvement in the authentication or payment process. *Id.* Claim 1 here similarly uses a customer identifier and a management server to determine whether an account can fund a purchase. The special-character barcode and vendor-server forwarding specify how information reaches the account-verification step; they do not claim a new technique for securing that information or improving verification technology. *Bozeman Financial LLC v. Federal Reserve Bank of Atlanta*, 955 F.3d 971, 978-81 (Fed. Cir. 2020), likewise treats financial-record comparison and transaction validation as abstract. *See also CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372-75 (Fed. Cir. 2011) (holding abstract claims directed to detecting credit-card

fraud by collecting and comparing transaction data associated with Internet addresses, a process capable of being performed mentally or with pencil and paper).

The technological-improvement decisions Wolverine invokes involve different claimed advances. *McRO, Inc. v. Bandai Namco Games America Inc.*, 837 F.3d 1299, 1313-16 (Fed. Cir. 2016), claimed particular rules that changed how computer animation was produced. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257-59 (Fed. Cir. 2014), addressed a problem arising from the operation of websites. *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1368-71 (Fed. Cir. 2020), involved a claimed improvement in cardiac monitoring. Appellant Br. at 12. None of those cases reach the patent in suit in this case. The ’689 claims instead identify a customer and route purchase information for account approval. They specify a payment arrangement, not an improved way for the underlying technology to perform its functions.

*Messaging Gateway*, 2015 WL 1744343 at *5, cited by Wolverine, does not change that conclusion. Appellant Br. at 13. The court there addressed a technical incompatibility between SMS and Internet Protocol communications and a claimed means of exchanging information across those systems. *Messaging Gateway*, 2015 WL 1744343, at *2-3, *5-6. The ’689 patent identifies no comparable incompatibility between product scanners and servers. It seeks to avoid the cost

and inconvenience of other ways to pay. As the district court rightly explained, *Messaging Gateway* concerned a technological communication problem; this patent concerns a different way to purchase goods. Appx19.

Because established Federal Circuit precedent directly forecloses Wolverine's arguments, the district court's Step One ruling should be affirmed.

## III. Claims 1-3 Lack an Inventive Concept Under *Alice* Step Two

### A. Each Limitation Implements An Account-Based Payment Method

*Alice* step two asks whether the claims, individually and as an ordered combination, contain an inventive application of the abstract idea. 573 U.S. at 217-18, 221-26. Claim 1(a) supplies a customer code. Step (b) converts it to a barcode with a distinguishing character. Step (c) provides for storage of the barcode and code; steps (d) and (e) establish and fund an account. Appx61. These limitations set up the customer's means of payment. They do not claim a new technique for generating barcodes or storing account information.

Step (f) uses a product scanner to capture product and customer barcodes. Step (g) requires the vendor server to detect the customer barcode and forward the identifier and purchase price. Step (h) checks whether the account has sufficient funds and sends approval if it does. Step (i) forwards approval to the register, and step (j) repeats the process. Appx61. The claim specifies the information needed to authorize a purchase and where it moves. It does not claim a new scanning

method, network protocol, or funds-comparison algorithm. Claims 2 and 3 specify where the customer stores the barcode, not a new function of the cellphone, card, or label. Appx61.

### B. The Ordered Combination Does Not Supply an Inventive Technological Arrangement

The claim's components were familiar: the patent itself describes the widespread use of product barcode scanners at checkout. Appx53 ('689 patent at 2:39-58). But the point is not simply that barcodes, scanners, and servers already existed. Claim 1 places the distinguishing character in the customer barcode, assigns detection and forwarding to the vendor server, assigns funds comparison to the management server, and returns approval to the register. Appx61. Those assignments are specific, and Albertsons considers them together. They identify the customer, check a funded account, and authorize a purchase. They do not claim a new technique for processing scanner data, improving communication between the servers, or overcoming a technological limitation in distributed computing. The asserted advance is the arrangement for payment, not an improvement in the operation of the technology implementing it. Appx17-Appx18.

Wolverine relies on *BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350-52 (Fed. Cir. 2016), arguing that a nonconventional arrangement of familiar components can supply an inventive

concept. Appellant Br. at 22-23. *BASCOM* does not help Wolverine. *BASCOM* involved placing individualized Internet filtering at a particular network location, preserving the benefits of both local and remote filtering and addressing a problem in how Internet filtering operated. 827 F.3d at 1350-52. The '689 patent, in contrast, does not claim a corresponding technical solution. Its division of tasks between vendor and management servers implements account verification and payment approval. That is a particular allocation of commercial functions, not a claimed improvement in the operation of a network.

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300-02 (Fed. Cir. 2016), involved distributed enhancement of network accounting data near its source to address technological limitations of centralized processing. Wolverine compares that architecture to its vendor and management servers. Appellant Br. at 23-24. The comparison fails. Claim 1(g) requires the vendor server to detect and forward a customer identifier and purchase price, while step (h) requires the management server to compare available funds and send approval. Appx61. The claim does not claim a new method of distributed data enhancement, reduce network congestion, or prescribe a particular security protocol. Its two servers perform different parts of the payment method. *Amdocs* supports Albertsons, not Wolverine.

*Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1316-18 (Fed. Cir. 2019), also does not help Wolverine. The *Cellspin* plaintiff plausibly alleged that an unconventional sequence of device pairing and data transmission improved how the devices communicated. Wolverine identifies no comparable technological improvement. Appellant Br. at 24-25. There are none. Instead, claim 1 follows the necessary sequence of a purchase: create a customer identifier and account, scan the identifier at checkout, compare the purchase price against available funds, and transmit approval if sufficient funds exist. Appx61 ('689 patent at 17:29-37; 18:1-34). These steps implement the financial transaction; they do not improve barcode scanning, server operation, or data transmission.

*Diamond v. Diehr*, 450 U.S. 175, 188 (1981), also relied on by Wolverine, fails to champion its cause. *Diehr* requires consideration of the claim as a whole, but it does not make an otherwise abstract transaction patent eligible merely because its steps occur in a specified order. *See Alice*, 573 U.S. at 217-18 (explaining that a claim must contain an inventive application beyond the abstract idea itself).

### C. The Specification's Referenced Benefits Are Not Claimed Technological Improvements

Wolverine relied extensively on the specification below, as it does in its briefing to this Court. The district court considered Wolverine's specification argument in full. Appx16-Appx20. Albertsons does not dispute that the

specification informs the § 101 analysis. Indeed, Albertsons embraces the specification because it confirms that the ’689 patent addresses the cost, convenience, and administration of retail purchases, not an improvement in barcode or computer technology. Read together, the claims and specification reinforce the district court’s conclusion that the asserted invention implements a payment method using existing technology. The specification cannot supply technological improvements that the claims do not capture. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369-70 (Fed. Cir. 2018) (holding claims ineligible where they failed to recite limitations incorporating the purported improvements to computer functionality described in the specification); *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766-69 (Fed. Cir. 2019) (explaining that the specification may inform the focus of the claims but cannot establish eligibility based on technological improvements that the claims do not recite).

Wolverine identifies eight asserted advantages in the specification. Appellant Br. at 17-19. They fall into three groups. None supplies the inventive concept missing from the claims.

*First*, the specification references problems with existing payment methods, not deficiencies in the technology used to process payments. Wolverine points to credit-card processing fees, the cost and limited availability of specialized readers, geographic restrictions on stored-value cards, and delays associated with cash and

debit-card purchases. Appellant Br. at 17-18. The patent proposes using barcode scanners already installed at retail checkout counters to make purchases faster and less expensive. Appx53 ('689 patent at 1:26-60, 2:39-58), Appx55 ('689 patent at 6:41-58). That explains the commercial appeal of the proposed payment arrangement. It does not identify a technological defect in existing scanners or computers, much less claim a technological solution to one. Avoiding credit-card fees, eliminating the need to purchase specialized readers, and reducing checkout delays may benefit merchants and customers. But those benefits do not improve the operation of the technology used to process the transaction. *ChargePoint*, 920 F.3d at 767-69 (distinguishing improvements to a commercial process from improvements to the technology implementing it).

*Second*, the specification confirms that the special-character barcode serves the commercial purpose of identifying a customer at checkout. Wolverine emphasizes that the method uses existing product barcode scanners and a special character to distinguish customer identifiers from product barcodes. Appellant Br. at 19. But the patent explains that the special character enables the system to distinguish the customer identifier from product information captured by the scanner. Appx54 ('689 patent at 3:15-30). Claim 1 does not claim a new barcode-encoding technique, change how the scanner reads a barcode, or specify an improved algorithm for detecting the identifier. Appx61. It claims use of the

scanner to collect information needed to authorize a purchase. *Secured Mail,* 873 F.3d at 910-12, confirms that using barcodes and identifiers to retrieve or process information does not, without more, establish a patent-eligible technological improvement. And *RecogniCorp, LLC v. Nintendo Co*., 855 F.3d 1322, 1326-27 (Fed. Cir. 2017) confirms that employing computer functions to implement an information-processing method does not transform the method into an inventive technological application. The "more" required by the *Alice* case law is entirely missing in the asserted claims.

*Third*, Wolverine's reliance on registration and privacy benefits fails because the asserted claims do not require the technological features described in the specification. Wolverine cites automatic registration, reduced disclosure of personal information to merchants, and improved protection of sensitive information. Appellant Br. at 18-19. The specification discusses automatic registration without requiring the user to enter personal information and describes additional possibilities, including time-variant and user-variant barcode encryption. Appx54 ('689 patent at 3:31-4:33). But Claim 1(d) claims only to establish a user account corresponding to the personal code. It does not require automatic registration upon a first purchase or any particular encryption, authentication, or data-security technique. Appx61. Nor does Claim 1 prohibit a PIN, signature, or other additional checkout step, notwithstanding the specification's discussion of

reducing checkout delays. The distinction matters. Wolverine cannot rely on optional features referenced in the specification to establish an inventive concept that does not appear as limitations in the claims. *ChargePoint*, 920 F.3d at 766-69. And a reference to a privacy benefit does not establish a technological improvement. The claims use customer identification and account verification to authorize purchases; they do not improve how computers secure, encrypt, or transmit personal information. *RecogniCorp*, 855 F.3d at 1327.

The district court neither ignored the specification nor dismissed its disclosures as irrelevant. It considered Wolverine's asserted advantages and correctly determined that they did not alter the claimed invention. Appx16-Appx18. The specification describes a way to make retail purchases less costly, more convenient, and potentially more private. The claims implement that transaction by identifying a customer, checking available account funds, and authorizing a purchase; all steps in a business transaction. Neither the claimed steps nor their ordered combination improves the operation of the underlying technology. The specification therefore reinforces, rather than undermines, the district court's conclusion that the asserted claims lack an inventive concept under *Alice*.

### D. The District Court Properly Dismissed Under Rule 12(b)(6)

Because patent eligibility is evaluated on the face of the fixed claims, Wolverine's assertion that the district court could not assess plausibility under Rule 12(b)(6) is baseless. Wolverine relies on *Berkheimer, Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018), *Cellspin*, and *CosmoKey Solutions GmbH & Co. KG v. Duo Security LLC*, 15 F.4th 1091 (Fed. Cir. 2021), to argue that conventionality cannot be decided on a motion to dismiss. Appellant Br. at 16-22. None save the patent-in-suit. *Berkheimer* concerned claims that captured asserted improvements in computer data storage and editing. 881 F.3d at 1369-70. *Aatrix* concerned a claimed data-file structure improving data importation. 882 F.3d at 1127-28. *Cellspin* involved a specific assertedly unconventional device-communication sequence. 927 F.3d at 1316-18. *CosmoKey* concerned a particular authentication activation sequence. 15 F.4th at 1097-99. Those cases recognize that plausible factual allegations concerning an inventive concept may prevent resolution of eligibility on the pleadings. But each involved an asserted improvement captured in the claims. None presents the same claim language or alleged advance as this case. There is no comparable improvement in the '689 patent's claims.

Contrary to Wolverine's suggestion, the presumption of validity does not bar dismissal under Rule 12(b)(6). Appellant Br. at 16, 25. The district court

expressly recognized that presumption. Appx5. Dismissal is warranted when the allegations, taken as true, present no material factual dispute concerning eligibility. *Aatrix*, 882 F.3d at 1125; *US Patent No. 7,679,637 LLC*, 164 F.4th at 1380.

Wolverine's allegations concern the asserted benefits of using the claimed payment arrangement. They do not establish a material factual dispute about an inventive application beyond that arrangement itself. Nor did the district court disregard Wolverine's allegations or the specification. Appellant Br. at 16-29. It examined the barcode, scanner, and server limitations, considered the asserted registration and security benefits, and evaluated the ordered combination. Appx11-Appx18. The court also scrutinized the patent and Wolverine's allegations for anything that might save the claims from ineligibility. Appx20. It found nothing. Accepting Wolverine's allegations as true does not change what the claims require or what the claimed arrangement accomplishes.

Wolverine argues that the district court needed prior-art evidence showing that the precise claimed arrangement was conventional. Appellant Br. at 25-26. Not so. Section 101 does not require an identical prior-art reference, and novelty alone does not supply an inventive concept. *See Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016). To be sure, *Berkheimer* recognizes that whether a claimed combination was well understood, routine, and conventional may present a factual question. 881 F.3d at 1368-70. But that is not

the circumstances presented here. Here, the patent's assertions that credit-card processing was expensive and specialized readers inconvenient do not establish that the claimed barcode-and-server arrangement improved scanner, server, or network operation. The district court evaluated the claims and specification, including the ordered combination, without resolving a material factual dispute against Wolverine. Appx17-Appx18. The district court's assessment is correct, and supported by the patent claims and this Court's case law. The Court should affirm.

## IV. Any Amendment to Cure Ineligibility Under § 101 Would Be Futile

This Court has repeatedly affirmed futility determinations following pleading-stage dismissals under § 101 where additional allegations could not cure the claims' eligibility defects. *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 706 (Fed. Cir. 2023) (explaining that amendment cannot change what the patent itself discloses); *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1295 (Fed. Cir. 2024) (affirming denial of leave where proposed allegations failed to cure the eligibility defects); *US Patent No. 7,679,637 LLC*, 164 F.4th at 1380-81 (affirming dismissal with prejudice where additional allegations could not overcome the patent's disclosures). Consistent with this Court's cases affirming dismissal on futility grounds, here the district court acted within its discretion because further pleading could not cure the defects in the claims.

Wolverine relies on *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018), to argue that it should have been permitted to plead additional facts concerning conventionality and the state of the art. Appellant Br. at 26-27. But *Aatrix* does not blunt the trial court's futility finding in this case. *Aatrix* involved a proposed amended complaint containing specific factual allegations connecting the claimed invention to improvements in computer functionality. 882 F.3d at 1125-28 (reversing denial of leave where proposed allegations raised factual disputes material to eligibility). Unlike the patentee in *Aatrix*, Wolverine submitted no proposed amended complaint identifying allegations capable of curing the eligibility defects. Its anemic and tepid request did not identify the factual allegations it now proposes for the first time on appeal. Appx183-Appx187. *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 776-77 (Fed. Cir. 2019) (affirming dismissal with prejudice where additional allegations would not cure the claims' eligibility defects).

Wolverine now proposes alleging that no point-of-sale system in 2010-2011 conventionally used a special-character customer barcode in the product-scanning stream and that its division of functions between the vendor and management servers was not routine. Appellant Br. at 26-27. Even accepting those newly minted assertions, they do not establish an inventive concept. They concern the asserted novelty of using existing barcode scanners and servers in a particular

arrangement to authorize retail purchases, not a claimed improvement in how those components operate. Far from proving an abuse of discretion, Wolverine's new argument only reinforces the correctness of the trial court's determination.

An inventive concept may reside in an unconventional arrangement of known components, but that rule does not apply here. *See BASCOM*, 827 F.3d at 1350 (finding an inventive concept in a specific, nonconventional arrangement of Internet filtering components that improved filtering technology). The relevant question is whether the ordered combination supplies an inventive concept beyond the abstract idea, rather than merely implementing that idea using the recited components. Unlike *BASCOM*, Wolverine's alleged unconventionality lies in using the claimed arrangement to perform a retail payment method, not in improving technological operations. Claim 1 specifies data to scan, distinguish, transmit, compare, and return, but discloses no new scanner operation, data-separation algorithm, or server-processing technique. Appx61. Wolverine's proposed allegations that this particular payment arrangement was new cannot change the express language of the claims. *See Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1364-65 (Fed. Cir. 2020) (affirming denial of leave where proposed allegations did not establish an improvement in computer functionality captured by the claims).

This Court's decision in *Cascades Branding Innovation LLC v. Aldi, Inc.*, No. 2024-1729, 2025 WL 2731321, at *4 (Fed. Cir. Sept. 25, 2025) (nonprecedential) (affirming denial of leave where proposed allegations and evidence could not cure the eligibility defect apparent from the patent), is particularly instructive. There, the patentee argued that amendment would permit additional factual allegations, expert evidence concerning conventionality, and evidence of commercial success. *Id*. The Court nevertheless affirmed the denial of leave because the patent disclosed the use of conventional components to perform the claimed functions, and further allegations could not cure the eligibility defect. *Id*. *Cascades*' treatment of proposed amendments supports the district court's decision here. The question is whether the additional allegations, taken as true, could establish an inventive concept in the claimed implementation, not merely whether the patentee could offer more evidence that its payment arrangement was new or commercially advantageous. Here, the district court examined the special-character barcode, the use of the existing product scanner, the vendor server's identification and transmission functions, and the management server's funds comparison and approval signal. Appx13-Appx18. It concluded, correctly, that their ordered combination implemented an abstract payment method rather than an inventive technological application. Appx13-Appx18. Additional allegations that

other payment systems used different equipment or that this particular arrangement was unconventional would not change that conclusion.

The district court reached its futility determination after scrutinizing the claims and specification and considering Wolverine's asserted advantages. Appx20. Claim 1 recites establishing an account, generating a customer-identifying barcode containing a special character, scanning that barcode and product barcodes at the cash register, distinguishing the customer identifier from product information, transmitting the information between servers, comparing the purchase price with available funds, and returning approval. Appx61. Claim 2 requires storing the barcode in a cellphone, while claim 3 specifies a label secured to a credit card or cellphone. Appx61. The district court considered the claim limitations individually and together, along with the specification's discussion of specialized readers, processing costs, checkout convenience, and customer privacy. Appx13-Appx18. The specification explains that existing barcode scanners could be used to avoid the expense and inconvenience of alternative payment equipment. Appx53 ('689 patent at 1:26-60, 2:39-58). Those asserted advantages do not establish an improvement in barcode scanning, server operation, or data processing captured by the claims. The district court was right to conclude that the claimed combination implements an account-based payment method without supplying an inventive concept beyond that method. Appx16-Appx18. No amended complaint

could change the claimed arrangement or transform its asserted commercial advantages into an inventive technological application. Appx20.

Finally, Wolverine's reliance on its request for leave and lack of prior amendments does not overcome futility. Appellant Br. at 26-27. Although delay and prejudice are relevant under Rule 15, their absence does not eliminate futility as an independent ground for denying amendment. *Great Plains*, 313 F.3d at 329 (recognizing futility as an independent basis for denying leave). Nor does *Aatrix* require amendment whenever a patentee asserts that the claimed combination was unconventional. The proposed allegations must be capable of changing the eligibility determination. Here, even accepting Wolverine's proposed account of the 2010-2011 state of the art, the claims remain unchanged. They claim an abstract payment method implemented through the recited functions of existing barcode scanners and servers. Having scrutinized the claims, the specification, and Wolverine's asserted advantages, the district court correctly determined that further pleading would be futile. It acted well within its discretion in dismissing with prejudice.

## V. The Judgment May Also Be Affirmed Because Wolverine Fails to State a Claim for Infringement

### A. This Court May Affirm on Grounds Albertsons Preserved Below

An appellee may defend a judgment on any ground supported by the record and raised below, regardless of whether the district court reached it. *Bailey v. Dart Container Corp. of Mich.*, 292 F.3d 1360, 1362 (Fed. Cir. 2002) (permitting an appellee to advance arguments supported by the record even if the district court rejected or did not address them); *Glaxo, Inc. v. TorPharm, Inc.*, 153 F.3d 1366, 1371 (Fed. Cir. 1998) (recognizing appellate discretion to affirm on an alternative legal ground). Although Wolverine contends that this Court cannot consider infringement because the district court did not decide the issue, Appellant Br. at 27-28, it nevertheless fully briefs the merits of this issue. Albertsons preserved its arguments by raising direct and indirect infringement in its motion to dismiss and reply. Because the existing record supports the insufficiency of Wolverine's allegations, this Court may affirm the judgment on this alternative ground.

### B. Wolverine Admits That Albertsons Does Not Directly Infringe the Patent

Wolverine admits in the complaint that Albertsons does not infringe the '689 patent. The patent claims only methods, requiring all steps to be performed by or attributable to a single entity. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc). Wolverine alleges direct infringement

of claims 1-3, citing its claim chart as support. Appx30 (Compl. ¶¶ 8-9). That chart addresses only claim 1 and shows the method requires two distinct actors, without alleging a basis for attribution. Appx65-Appx83. Dependent claims 2 and 3 necessarily fail for the same reason.

Wolverine's claim chart confirms that two separate entities practice its claimed method: Albertsons and an Albertsons retail customer. *See Akamai*, 797 F.3d at 1022. For instance, Wolverine alleges that Albertsons practices element (b) by converting internal tokens into barcodes and element (d) by establishing user accounts. Appx66, Appx70-Appx71 (Compl. Ex. B at 5, 9-10). However, Wolverine alleges that the customer practices element (e) by depositing funds into an in-app account. Appx72 (Compl. Ex. B at 11). Wolverine thus admits that its allegations divide performance of the method steps between Albertsons and its customer.

Additionally, Wolverine alleges that both Albertsons and its customer practice portions of the method for certain elements. For element (a), "providing a personal code to a person for their use to purchase goods," Wolverine alleges that "when a customer opens the Albertsons app and chooses Albertsons Cash, the system generates a one-time 3PL code." Appx65-Appx66 (Compl. Ex. B at 4-5). Wolverine further alleges immediately after that "[t]he customer then scans that code at checkout to pay directly from their Albertsons Cash balance." Appx66

(Compl. Ex. B at 5). Similarly, for element (f), "conducting purchases at vendors each having a vendor server wherein each purchase includes scanning product barcodes including product price and said User ID Barcode," Wolverine alleges that the user conducts the purchase and scanning, while the "checkout system sends both the product barcodes and your User ID barcode back to Albertsons' records." Appx72-Appx73 (Compl. Ex. B at 11-12). Wolverine thus attributes performance of various elements of the asserted method to Albertsons, the customer, or both.

The complaint fails to allege facts supporting joint infringement. To establish joint infringement among multiple actors, a patent owner must attribute one party's acts to another, making a single entity responsible for the infringement. *Lyda v. CBS Corp.*, 838 F.3d 1331, 1338 (Fed. Cir. 2016). Attribution applies only when an entity directs or controls another's performance or when actors form a joint enterprise. *Id.* at 1339. Wolverine alleges neither basis for attribution. Appx28-Appx34, Appx65-Appx83. It thus fails to attribute all steps to a single entity.

When a complaint fails to allege that a single actor performs, or is responsible for, all steps of a method claim, dismissal is proper at the pleading stage. *See Lyda*, 838 F.3d at 1340 (affirming dismissal at the pleading stage). Just

as in *Lyda*, Wolverine's complaint relies on two different entities without facts supporting attribution. This Court can affirm dismissal on this ground.

### C. Wolverine Fails to Plausibly Allege Indirect Infringement

Although the complaint briefly asserts indirect infringement, Appx30 (Compl. ¶¶ 10-11), these claims fail for two reasons. First, "[t]here can be no inducement or contributory infringement without an underlying act of direct infringement." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1333 (Fed. Cir. 2012). Because Wolverine fails to establish direct infringement, *supra* § V.B, its indirect infringement claims fail as a matter of law. Second, Wolverine fails to plead any plausible facts supporting indirect infringement, and there are none.

An inducement claim "must plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'" *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018) (alterations in original) (quoting *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017)). Wolverine fails to plead any factual support for the knowledge and intent elements of inducement or the statutory requirements of contributory infringement. It offers only a single boilerplate paragraph devoid of facts demonstrating specific intent or knowledge. Appx30 (Compl. ¶ 10).

Likewise, contributory infringement requires a plaintiff to show "1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010). Wolverine again relies entirely on a bare boilerplate recitation without factual enhancement. Appx30 (Compl. ¶ 11). Because the complaint offers nothing more than bare assertions, it fails to allege indirect infringement.

A pleading offering labels, conclusions, or a formulaic recitation of the elements of a cause of action is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Because Wolverine's complaint relies entirely on conclusory allegations and advances fundamentally flawed infringement theories, this Court may affirm the district court's judgment on non-infringement grounds.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the foregoing reasons, Albertsons respectfully requests that this Court affirm the district court's judgment dismissing Wolverine's complaint with prejudice. The district court correctly held that claims 1 through 3 of the '689 patent are directed to patent-ineligible subject matter under 35 U.S.C. § 101 and

properly denied leave to amend as futile. Alternatively, this Court may affirm because Wolverine fails to state a claim for direct or indirect infringement.

Dated: November 10, 2026

Respectfully submitted,

/s/ Matthew Warren
Matthew Warren
Madeline A. Woodall
*Attorneys for Appellee,*
*Albertsons Cos. Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 26-2113

**Short Case Caption:** Wolverine Barcode IP LLC v. Albertsons Cos. Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 7998 words.
- [ ] the filing has been prepared using a monospaced typeface and includes __________ lines of text.
- [ ] the filing contains __________ pages / __________ words / __________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. __________).

Date: 11/10/2026

Signature: /s/ Matthew Warren

Name: Matthew Warren